# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **HOPE HOSPICE, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

This is a suit arising under the laws of the Internal Revenue Code of the United States for the refund of taxes erroneously and illegally assessed against and collected from Plaintiff.

## Parties

1. Plaintiff, Hope Hospice, Inc. ("Taxpayer"), is an Alabama corporation having its principal place of business at 1100 East Park Drive, Suite 303, Birmingham, AL 35235.

2. The Defendant is the United States of America.

## Jurisdiction and Venue

3. Jurisdiction over this matter is conferred upon this Court by 28 U.S.C. § 1346(a)(1).

1

4. Venue is proper in the Southern Division of the Northern District of Alabama pursuant to 28 U.S.C. § 1402(a)(2).

## Background

5. Taxpayer is a small provider of hospice services in Jefferson County, Alabama. Ms. Deb Stark, RN, is Taxpayer's founder and sole shareholder.

6. Taxpayer employs a number of individuals. It is required to report and pay quarterly Federal Insurance Contributions Act ("FICA") taxes based on its employees' total wages, subject to a statutory annual maximum on the Social Security component that changes each year.[1]

7. Taxpayer is also required to pay annual Federal Unemployment Taxes ("FUTA") based on its employees' total wages up to a statutory annual maximum of $7,000 per employee during the relevant time period.

### *The Excess FUTA Tax Assessment*

8. Due to the lengthy and ultimately terminal illness of Ms. Stark's husband, Taxpayer failed to report and pay annual FUTA taxes for calendar years 2016, 2017 and 2018.

9. Taxpayer filed FUTA returns for 2016, 2017 and 2018 on October 8, 2021, 2021.  The total tax due for all three years was $4,236.88.

---

[1] The statutory maximum was $127,200 for 2017, $128,400 for 2018, $132,900 for 2019, and $137,700 for 2020.

10. However, the Internal Revenue Service ("IRS") constructed FUTA tax returns for those years that reflected a total liability of $232,428.10, plus $195,469.40 in penalties and interest. This total amount exceeded Taxpayer's actual FUTA liability by $423,657.62. The discrepancy in the amount of Taxpayer's FUTA liability resulted from the IRS basing this calculation on the total wages paid by Taxpayer, without applying the statutory maximum of $7,000.00 per employee. This calculation is reflected below:

| Tax Period | Actual Liability | Assessed Liability | Interest and Penalties | Excess Collection |
|---|---|---|---|---|
| 2016 | $1,491.46 | $90,347.87 | $82,275.83 | $171,132.24 |
| 2017 | $1,500.35 | $72,112.85 | $61,425.09 | $132,037.59 |
| 2018 | $1,245.07 | $69,964.38 | $51,768.48 | $120,487.79 |
| **TOTAL** | $4,236.88 | $232,425.10 | $195,469.40 | **$423,657.62** |

*The Excess FICA Tax Assessment*

11. Unfortunately, as a result of the IRS's erroneous assessment of Taxpayer's FUTA tax liability, it began to examine Taxpayer's FICA tax returns and made erroneous adjustments to those accounts.

12. Taxpayer withheld and timely paid FICA taxes for each quarter of calendar years 2016, 2017, 2018, 2019, and 2020 (the "Period at Issue"), and timely filed FICA tax returns for same.

13. However, the IRS alleges that Taxpayer did not file FICA tax returns for certain financial quarters during the Period at Issue. Accordingly, the IRS constructed FICA tax returns for the Period at Issue. These constructed returns

contain multiple errors in calculating Taxpayer's FICA liability, interest, and penalties, including:

    a.    Assessing a FICA tax liability of $104,296.08 for Quarter 1, 2020, despite the fact that Taxpayer had **no employees** for the entirety of 2020, and should thus have had a FICA liability of $0. For the entirety of calendar year 2020, Taxpayer contracted with an unrelated staffing service, PBS PEO Services, LLC ("PBS"). Under the contract, PBS's employees provided staffing for Taxpayer, and PBS agreed to be responsible for the FICA taxes associated with PBS employees.

    b.    Assessing a FICA tax liability of $122,212.38 for Quarter 1, 2017, when Taxpayer's actual FICA liability for that period was only $53,573.83. Taxpayer has been unable to determine the basis for the IRS' assessment of an amount that is significantly higher than its actual FICA liability for this quarter. The assessment is nearly **twice** Taxpayer's FICA liability for each other financial quarter of 2017, although the IRS did not assess a higher tax liability for those quarters.

    c.    Imposing failure to pay penalties, despite Taxpayer having paid its FICA taxes in full when due and having provided records to the IRS showing that all employment taxes were timely paid in full through deductions and payments made by Taxpayer's independent payroll processing company.

    d.    Imposing failure to file penalties when Taxpayer had filed FICA tax returns.

    e.    Calculating penalties based on Taxpayer's total assessed liability, rather than the unpaid balance of that liability.

    f.    Calculating interest and penalties based on erroneously calculated amounts of Taxpayer's total FICA tax liability for Quarter 1, 2017 and Quarter 1, 2020.

14.    Taxpayer's total FICA tax liability for the Period at Issue was $1,005,560.01. However, because of the above errors, the IRS' constructed returns reflect a total FICA tax liability of $1,178,494.64 for the Period at Issue, plus $133,782.77 in interest and penalties. This exceeds Taxpayer's actual FICA liability by $306,717.40. This calculation is reflected below:

| Tax Period | Actual Liability | Assessed Liability | Interest and Penalties | Excess Collection |
|---|---|---|---|---|
| Q1 2016 | $90,134.90 | $90,134.90 | $900.70 | $900.70 |
| Q2 2016 | $96,603.18 | $96,603.18 | $321.70 | $321.70 |
| Q3 2016 | $96,603.13 | $96,603.13 | $857.47 | $857.47 |
| Q1 2017 | $53,573.83 | $122,212.38 | $55,588.32 | $124,226.87 |
| Q3 2017 | $65,727.52 | $65,727.52 | $876.46 | $876.46 |
| Q4 2017 | $66,774.08 | $66,774.08 | $1,329.76 | $1,329.76 |
| Q1 2018 | $65,321.31 | $65,321.31 | $704.85 | $704.85 |
| Q2 2018 | $70,715.65 | $70,715.65 | $5,590.97 | $5,590.97 |
| Q3 2018 | $73,531.68 | $73,531.68 | $1,118.17 | $1,118.17 |
| Q4 2018 | $72,233.24 | $72,233.24 | $913.72 | $913.72 |
| Q1 2019 | $74,282.30 | $74,282.30 | $2,734.15 | $2,734.15 |
| Q2 2019 | $107,273.13 | $107,273.13 | $15,068.20 | $15,068.20 |
| Q3 2019 | $72,786.06 | $72,786.06 | $4,029.12 | $4,029.12 |

| Q1 2020 | $0 | $104,296.08 | $43,749.18 | $148,045.26 |
| TOTAL | $1,005,560.01 | $1,178,494.64 | $133,782.77 | **$306,717.40** |

15. Taxpayer has paid in full the entire amount of the FICA taxes assessed for the Period at Issue, including the erroneous assessments, fees, and interest included in these amounts.

### *The Tax Levy*

16. On August 16, 2021, the IRS sent Taxpayer a notice of intent to impose a levy in the amount of $580,815.31 associated with the constructed FUTA returns for 2016 through 2018 and the constructed FICA returns for the first quarter of 2017 and the second quarter of 2019.

17. Although the notice of intent reflected that the IRS would impose a levy in the amount of $580,815.31, the IRS ultimately garnished a total of $775,118.51 in Medicare payments due to Taxpayer for hospice services it rendered during the pandemic. This exceeds the total amount of the levy as stated by the IRS in the notice of intent by $194,302.20.

### *Partial Refunds and Calculation of Remaining Refund Owed*

18. Upon learning of these issues, Taxpayer attempted to contact the IRS to remedy them.

19. After numerous attempts by Taxpayer to communicate with the IRS and intervention from a Congressional office, the IRS has refunded a total of $564,807.83 to Taxpayer. Of this, $119,720.58 is attributable to Taxpayer's FICA

tax returns. $438,467.47 is attributable to Taxpayer's FUTA tax returns, which exceeds the amount of FUTA tax refunds owed to Taxpayer by $14,809.85. The IRS has made one refund of $6,618.78 that Taxpayer has been unable to attribute to a specific return or account.

20. The excess FICA tax, penalties, and interest for the Period at Issue plus the excess amount of the levy total to $410,986.01. After applying the FICA refunds, the excess FUTA refunds, and the unlabeled refund to this amount, the total FICA refund due to Taxpayer for the Period at Issue is $359,870.39

## *Claims for Refund*

21. Taxpayer has sent numerous written requests to the IRS, each of which adequately informed the IRS that a refund was sought and addressed the merits of Taxpayer's dispute as required to satisfy 26 U.S.C. § 7422(a), both individually and in aggregate. These informal claims include:

   a. On or about December 14, 2021, Taxpayer filed a Request for Taxpayer Advocate Service Assistance with respect to its FICA and FUTA taxes for 2016 through 2020. It requested that the levy be removed and that substantiating documents previously provided to the IRS by Taxpayer and contained in Taxpayer's file be reviewed to correct the FICA and FUTA assessments for that period (see attached as Exhibit A).

    b. On or about December 27, 2021, Taxpayer sent a letter to the IRS stating that Taxpayer's assessed tax liability had been paid in full and requesting that the levy be removed (see attached as Exhibit B).

    c. On or about February 5, 2022, Taxpayer filed amended FICA returns for 2020 that set forth in writing that the assessment for the first quarter of 2020 was inaccurate and that Taxpayer's liability for that quarter was $0 (see attached as Exhibit C).

22.    More than six months have elapsed since each of these claims was made. The IRS has neither allowed nor disallowed these claims.

23.    Additionally, on August 16, 2022, Taxpayer filed a formal Claim for Refund with the IRS with respect to the assessment of the FICA tax for the first quarter of 2020 (see attached as Exhibit D).

## Count I—FICA and Withholding Tax

24.    Taxpayer hereby incorporates the foregoing averments as if restated more fully herein.

25.    The IRS erroneously assessed and collected FICA and withholding taxes against Taxpayer as set forth above.

26.    Taxpayer has filed informal claims for refund of the FICA taxes at issue pursuant to 26 U.S.C. § 7422(a), as discussed above and reflected in Exhibits A, B, and C.

27. More than six months have elapsed from the filing of Taxpayer's informal claims for refund and the claims have neither been allowed nor disallowed by the IRS.

28. As grounds for recovery, Taxpayer incorporates by reference the averments contained in Exhibits A, B, C, and D.

29. Taxpayer has paid in full the entire amount of the FICA taxes assessed for the Period at Issue, including the erroneous assessments, fees, and interest included in these amounts.

30. The assessment and collection of FICA and withholding taxes were erroneous and illegal.

31. Taxpayer has overpaid its liability for FICA and withholding taxes and is entitled to recover from the Defendant the sum of $359,870.39, plus interest.

32. Taxpayer is the sole owner of its claim against the Defendant and has made no assignment of said claim.

33. Taxpayer reserves the right to amend its Complaint to add a claim for civil damages against the IRS pursuant to 26 U.S.C. § 7433(a) pending a decision on Taxpayer's administrative claim filed in connection therewith.

WHEREFORE, Taxpayer respectfully requests that this Court grant judgment against the Defendant in the amount of $359,870.39, together with attorney's fees,

costs, and interest as provided by law, and for such other and further relief as this Court may deem appropriate.

                                                       Respectfully submitted,

                                                       */s/ Barry A. Ragsdale*
                                                       Barry A. Ragsdale
                                                       Robert S. Vance, III
                                                       *Attorneys for Hope Hospice, Inc.*

**OF COUNSEL:**

**DOMINICK FELD HYDE, P.C.**
1130 22nd Street South, Suite 4000
Birmingham, Alabama 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com


**TO BE SERVED BY PRIVATE PROCESS SERVER**

Prim F. Escalona
United States Attorney for the Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203


**TO BE SERVED BY CERTIFIED MAIL**

Internal Revenue Service
Department of the Treasury
Ogden, UT 84201

Jolene A. Lauria
Assistant Attorney General for Administration
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530