FILED

2023 Dec-01  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| HOPE HOSPICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-01365-SGC |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

This is a tax refund suit brought by Hope Hospice, Inc.  It is before the court on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the *Federal Rules of Civil Procedure* by the United States of America (the "Government").  (Doc. 23).[2]  The motion is due to be granted for the reasons stated below.

## I. Procedural History

Hope Hospice initiated this action by filing a complaint on October 25, 2022. (Doc. 1).  The Government filed a motion to dismiss the complaint for lack of subject matter jurisdiction, in response to which Hope Hospice filed an amended complaint.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 17).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

(Docs. 13, 19).   The Government then filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction.  (Doc. 23).  The motion has been fully briefed.  (Docs. 26, 28).  The parties requested that discovery not commence until the court ruled on the Government's motion to dismiss.  (Doc. 15 at 3).  The court therefore entered a stay following a scheduling conference with the parties. (Doc. 30).

## II. Standard of Review

The Government contends the allegations contained in the amended complaint are not sufficient to establish subject matter jurisdiction.  This is known as a "facial attack" on subject matter jurisdiction.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (distinguishing between a "facial attack" on subject matter jurisdiction and a "factual attack" on subject matter jurisdiction).  In the case of a facial attack on subject matter jurisdiction, a court accepts the factual allegations contained in the operative pleading as true.  *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008).[3]  But it is not required to accept conclusory allegations as true.  *Lawrence v. United States*, 597 F. App'x 599, 602 (11th Cir. 2015).

---

[3] Exhibits to a complaint are considered part of a complaint for all purposes.  Fed. R. Civ. P 10(c). A court therefore may consider exhibits attached to a complaint in ruling on a motion to dismiss made under Rule 12(b)(1).  *See McElmurray v. Consol. Gov't of August-Richmond Cnty.*, 501 F.3d 1244, 1251-54 (11th Cir. 2007) (considering exhibits attached to complaint in deciding facial attack on subject matter jurisdiction).

2

### III. Allegations of Amended Complaint

Hope Hospice is a provider of hospice services. (Doc. 19 at ¶ 5). It did not timely report or pay its annual taxes due under the Federal Unemployment Tax Act ("FUTA") for 2016, 2017, or 2018. (Doc. 19 at ¶ 8). The Internal Revenue Service ("IRS") constructed FUTA returns for those years reflecting taxes owed in an amount exceeding the amount actually owed. (Doc. 19 at ¶¶ 9-10). The IRS has remedied those errors and refunded the excess FUTA taxes paid by Hope Hospice. (Doc. 19 at p. 2 n.2). But examination of Hope Hospice's FUTA tax liability prompted the IRS to examine Hope Hospice's tax liability under the Federal Insurance Contributions Act ("FICA"), and that led to a dispute that remains unresolved and forms the basis of the present action. (Doc. 19 at ¶ 11).

Hope Hospice *did* report and pay its FICA taxes for each quarter of 2016, 2017, 2018, and 2019 timely. (Doc. 19 at ¶ 12). It did not report or pay FICA taxes for any quarter of 2020 because it did not have any employees during those quarters. (Doc. 19 at ¶ 12). The IRS, however, asserted Hope Hospice did not report or pay FICA taxes for certain quarters of 2016, 2017, 2018, 2019, and 2020 and constructed its own FICA returns for those quarters, reflecting taxes owed in an amount

exceeding the amount reflected on Hope Hospice's returns, together with penalties and interest.  (Doc. 19 at ¶¶ 13-15).[4]

On August 16, 2021, the IRS sent Hope Hospice a notice of its intent to impose a tax levy in a specific amount to satisfy the tax liability reflected on the constructed FUTA returns for 2016, 2017, and 2018 and the constructed FICA returns for the first quarter of 2017 and the second quarter of 2019.  (Doc. 19 at ¶ 17).  But the IRS ultimately garnished Hope Hospice's Medicare reimbursements in an amount exceeding the amount stated in the notice.  (Doc. 19 at ¶ 18).

The IRS began issuing refunds to Hope Hospice on February 15, 2022.  (Doc. 19 at ¶ 26).  Of the total amount refunded, $119,720.58 is attributable to the constructed FICA returns.  (Doc. 19 at ¶ 27).  But Hope Hospice claims it is still owed refunds totaling $359,870.39 in relation to the erroneous assessment of its FICA tax liability.  (Doc. 19 at ¶ 28).

Hope Hospice tried to resolve its dispute with the IRS before coming to the court.  It communicated, or attempted to communicate, with IRS agents but "encountered nothing but obstacles and delay." (Doc. 19 at ¶¶ 19-21).  It contacted, or attempted to contact, local and regional IRS offices and public IRS hotlines.  (Doc. 19 at ¶ 22).  "Several individuals who responded were sympathetic, but none were

---

[4] The quarters at issue are the first, second, and third quarters of 2016; the first, third, and fourth quarters of 2017; all quarters of 2018; the first, second, and third quarters of 2019; and the first quarter of 2020.  (Doc. 19 at ¶ 13 n.3).

able to help." (Doc. 19 at ¶ 22). Hope Hospice does not allege the substance of those communications. It does, however, identify and attach to its amended complaint certain letters and forms submitted to the IRS in relation to its predicament.

On November 15, 2021, Hope Hospice's certified public accountant sent a letter to the IRS in response to notices indicating Hope Hospice had an outstanding balance in relation to its FICA taxes for the first quarter of 2017. The letter stated the plaintiff had reported and paid all FICA taxes owed for the quarter at issue and attached supporting evidence. (Doc. 19 at ¶ 23(a); Doc. 19-1).[5]

On December 14, 2021, Hope Hospice filed a Form 911 Request for Tax Advocate Service Assistance. The narrative portion of the request explained, "The IRS has attached a lien on Medicare payments normally received by the business." It noted "[c]orrespondence has been sent to the IRS addressing the issue(s) with documentation to support the fact that the amounts being assessed are not correct." It asked "that the lien be removed and that there be a review of all submitted documentation so as to resolve this matter." (Doc. 19 at ¶ 23(b); Doc. 19-2).

On February 11, 2022, at the recommendation of the Tax Advocate Service, Hope Hospice filed FICA returns for the first quarters of 2019 and 2020, each of

---

[5] The amended complaint identifies November 15, 2020, as the date of the letter. (Doc. 19 at ¶ 23(a)). But the letter attached to the amended complaint is dated November 15, 2021. (Doc. 19-1).

which reflected there was no balance due for the period.  (Doc. 19 at ¶ 23(c); Doc. 19-3; Doc. 19-4).  The IRS rejected those returns.  It took the position Hope Hospice had to file amended FICA returns for these quarters because the returns constructed by the IRS were original returns.  (Doc. 19 at ¶ 23(d)).  Hope Hospice filed an amended FICA return, also known as a "Form 941-X," for the first quarter of 2020 on August 17, 2022.  The amended return reflected there was no balance due for the quarter because Hope Hospice's FICA tax liability for the period was $0.  (Doc. 19 at ¶ 23(d); Doc. 19-5).[6]

Contemporaneously with submission of the Form 941-X, Hope Hospice's attorney sent a letter dated August 16, 2022, to the IRS, requesting a refund of excess FICA taxes assessed and paid for the first quarter of 2020.  The August 17, 2022 Form 941-X was attached to the letter.  (Doc. 19 at ¶ 23(e); Doc. 19-6).  Hope Hospice initiated this action by filing a complaint on October 25, 2022.  (Doc. 1). On March 6, 2023, Hope Hospice's attorney sent a second letter to the IRS, requesting a refund of excess FICA taxes assessed and paid for all quarters at issue. (Doc. 19 at ¶ 25; Doc. 19-7).  March 6, 2023, also was the date on which the plaintiff filed an amended complaint in this action.  (Doc. 19).

---

[6] Hope Hospice did not file an amended return for the first quarter of 2019 because it had reason to believe a refund may have been forthcoming.  (Doc. 19 at ¶ 23(d) n.4).

## IV. Discussion

The United States is a sovereign entity that is immune from suit unless it consents to be sued. *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1188 (11th Cir. 2011). It has consented to be sued for the recovery of taxes "alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346. But this waiver of sovereign immunity is conditional. The conditions relevant here are two. First, a taxpayer must "duly file[]" an administrative claim for refund with the IRS before commencing an action in district court. 26 U.S.C. § 7422(a). And second, after "filing the claim required under [§ 7422(a)]," a taxpayer must allow six months to elapse before commencing an action in district court, unless the IRS renders a decision on the claim within that time. 26 U.S.C. § 6532(a)(1). The requirements of §§ 6532(a)(1) and 7422(a) are jurisdictional. *Christian Coal. of Fla.*, 662 F.3d at 1188 (discussing several "jurisdictional statutes" relevant to a tax refund suit, including §§ 6532(a)(1) and 7422(a)); *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1264 (11th Cir. 2006) (explaining court has no subject matter jurisdiction if requirements of § 7422(a) are not met).[7]

---

[7] The Federal Circuit recently held the "duly filed" requirement of § 7422(a) "is more akin to a claims-processing rule," providing a basis for dismissal under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, "than a jurisdictional requirement." *Brown v. United States*, 22 F.4th 1008, 1012 (Fed. Cir. 2022). Hope Hospice does not argue any requirements of § 6532(a)(1) or § 7422(a) are other than jurisdictional, and the court is not aware of any decision of the Eleventh Circuit reversing the position taken in *Christian Coal. of Fla.* and *Wachovia Bank*.

For an administrative refund claim to be "duly filed," it must comply with "the provisions of law in that regard" and regulations established by the Secretary of the Treasury.  § 7422(a); *Ginsburg v. United States*, 17 F.4th 78, 84 (11th Cir. 2021).  The applicable regulations require the claim to be "filed on the form prescribed by the IRS."  26 C.F.R. § 31.6402(a)-2(a)(ii).  The form prescribed by the IRS for filing a FICA refund claim is Form 941-X.  Rev. Rul. 2009-39, 2009-52 I.R.B. 951 (2009); 15 MERTENS LAW OF FEDERAL INCOME TAXATION, § 58:26 (May 2023 update).  A separate claim must be made for each taxable period.  26 C.F.R. § 301.6402-2(d).  The claim must "designate the return period to which [it] relates" and "explain in detail the grounds and facts relied upon to support [it]."  § 31.6402(a)-2(a)(ii).  It must be "verified by a written declaration signed under penalty of perjury."  § 301.6402-2(b)(1).  The verification may be made by the taxpayer or the taxpayer's attorney, but if by the latter, a power of attorney must be attached to the claim.  § 301.6402-2(e); *Gregory v. United States*, 149 Fed. Cl. 719, 723 (2020); *Special Touch Home Care Servs., Inc. v. United States*, 2022 WL 673660, at *4-5 (E.D.N.Y. Mar. 7, 2022).  The claim must be filed with the IRS "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."  26 U.S.C. § 6511(a).

The Supreme Court has afforded a taxpayer some grace in complying with the statutory and regulatory requirements for filing an administrative refund claim.  It held in *United States v. Kales* that:

> a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.

314 U.S. 186, 194 (1941).  This holding is known as the "informal claim doctrine." *See, e.g., PALA, Inc. Emps. Profit Sharing Plan and Tr. Agreement v. United States*, 234 F.3d 873, 877 (5th Cir. 2000); *Greene-Thapedi v. United States*, 549 F.3d 530, 533 (7th Cir. 2008).  An "informal claim" – a claim that does not comply with all statutory and regulatory requirements – is not a substitute for a "formal claim" – a claim that does comply with all statutory and regulatory requirements.  "The informal claim doctrine is predicated on the expectation that any formal deficiency will at some point be corrected."  *Greene-Thapedi*, 549 F.3d at 533; *see also Goldberg v. United States*, 881 F.3d 529, 533 (7th Cir. 2018) ("In applying the informal claim doctrine, we have emphasized the importance of the requirement that a taxpayer perfect an informal administrative claim by remedying the formal defects.") (citing *Greene-Thapedi*).  The point at which an informal claim is corrected must be before the taxpayer seeks judicial intervention.  *Dixon v. United*

*States*, 67 F.4th 1156, 1162-63 (Fed. Cir. 2023).  The taxpayer cannot perfect an informal claim after filing suit.  *See, e.g., Special Touch Home Care Servs.*, 2022 WL 673660, at *7-8 (holding that, even if letter qualified as informal claim, court would lack subject matter jurisdiction because plaintiff did not perfect claim before commencing action); *United States v. Chen-Baker*, 2023 WL 155741, at *3-4 (W.D.N.Y. Jan. 11, 2023) (holding perfection of informal claims during pendency of action "would not solve the jurisdictional issue").

The six-month waiting period begins to run when an informal claim is perfected by the submission of a formal claim to the IRS or when a formal claim is submitted in the first place.  The plain language of the relevant statutory provisions requires this result.  Section 6532 identifies the filing of "the claim required under [§ 7422(a)]" as the trigger for the waiting period, and the claim required under § 7422(a) is a claim "duly filed" in accordance with the regulations established by the Secretary of the Treasury.  §§ 6532(a)(1) and 7422(a).  Moreover, courts have made clear the function of the informal claim doctrine is limited to tolling the statute of limitations for submitting an administrative refund claim to the IRS.  *See Pennoni v. United States*, 86 Fed. Cl. 351, 361 (2009) ("A plaintiff may satisfy the timeliness component of the claim requirement by filing a formal claim . . . or by filing an informal claim of which the formal defects are later remedied by amendment of the claim."); *Goldberg v. United States*, 881 F.3d 529, 532-33 (7th Cir. 2018)

("Taxpayers fearing that the IRS will reject their otherwise timely refund claims for failure to dot an *i* need not worry that the statutory time limit will expire before they can cure any defects. The informal claim doctrine allows a taxpayer's claim for a refund to survive so long as the taxpayer files some 'notice fairly advising the Commissioner of the nature of the taxpayer's claim' within the limitations period and later makes sure that all 'formal defects and lack of specificity have been remedied' by a fully compliant refund claim.") (quoting *Kales*, 314 U.S. at 194); *BCS Fin. Corp. v. United States*, 118 F.3d 522, 524 (7th Cir. 1997) ("[C]ourts have, with the IRS's reluctant acquiescence, occasionally allowed a 'claim' that does not satisfy all the requirements of the regulation to arrest the running of the three-year period."); *Dixon v. United States*, 67 F.4th 1156, 1162 (Fed. Cir. 2023) ("Where the [informal claim] doctrine applies, an untimely formal claim is allowed to relate back, for timeliness purposes, to a timely informal claim."); *Chen-Baker*, 2023 WL 155741, at *4 ("[T]he 'informal claim' doctrine acts to toll the statute of limitations for the time within which a taxpayer must file an administrative claim but does not alter the jurisdictional prerequisites to a lawsuit."). It does not trigger the waiting period.[8]

---

[8] Hope Hospice asserts that, in the instance of an informal claim later perfected by a formal claim, the waiting period runs from submission of the informal claim. (Doc. 19 at 10 n.5). The only authority Hope Hospice cites to support this position is *Weiner v. United States*, 15 Cl. Ct. 43 (1988). In *Weiner*, the United States Claims Court observed a taxpayer "seem[ed] to have abandoned" a particular refund claim during the pendency of his refund suit but determined in the

The six-month waiting period must expire before a taxpayer brings its dispute to court. *See, e.g., Gaynor v. United States*, 150 Fed. Cl. 519, 538 (2020) (holding elapse of six-month waiting period during pendency of litigation was "immaterial"); *Pearson v. United States*, 2013 WL 3450147 (W.D. Tex. July 8, 2013) (dismissing for lack of subject matter jurisdiction case commenced during pendency of six-month waiting period, even though more than six months had elapsed during pendency of district court case). The purpose of the six-month waiting period is to allow the IRS an opportunity to review a claim and take action thereon. *Crocker v. United States*, 563 F. Supp. 496, 500 n.3 (S.D.N.Y. 1983) ("The law requires that the IRS be given an opportunity to rule on a claim for refund. For this reason, no claim may be reviewed in a court until the IRS has either denied the claim or failed to act for six months after the claim was filed."). When a taxpayer takes its claim for refund from the IRS to a district court, the claim is no longer before the IRS, and the IRS loses authority to allow, disallow, or otherwise resolve the claim. That authority transfers to the Department of Justice. *See* Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted in* 5 U.S.C. § 901 (2000); *Dixon*, 67 F.4th at 1162-63

---

alternative that the claim was premature. 15 Cl. Ct. at 46. According to the court, a letter the taxpayer had submitted to the IRS "may have constituted a valid informal claim for a refund" in the absence of a formal claim but, "even so," the taxpayer had not waited six months from submission of the letter before seeking judicial intervention. *Id.* The alternative holding made in this 25-year-old decision without meaningful discussion of the informal claim doctrine or the six-month waiting period does not persuade the court the interpretation for which Hope Hospice advocates is the correct one.

(discussing transfer of authority).  Allowing the six-month waiting period to run and elapse during the pendency of a tax refund suit would thwart the purpose of the waiting period and render it a "dead letter."  *Gaynor*, 150 Fed. Cl. at 538.

"If the [IRS] chooses not to stand on [its] own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the [IRS] to invoke technical objections after [it] has investigated the merits of a claim and taken action upon it," *Angelus Milling Co. v. C.I.R.*, 325 U.S. 293, 297 (1945), hence, the "waiver doctrine."  The basis for a waiver argument is that the IRS has "dispensed with the formal requirements of a claim by investigating it on the merits."  *Id.* at 296.  A waiver need not be explicit – "it is not essential for the establishment of a waiver that the [IRS] communicate [its] ruling on the merits to the taxpayer" – but "[i]n the absence of such explicitness the implication that formal requirements were dispensed with should not be tenuously argumentative."  *Id.* at 298.

> The showing should be unmistakable that the [IRS] has in fact been fit to dispense with [its] formal requirements and to examine the merits of the claim.  It is not enough that in some roundabout way the facts supporting the claim may have reached [it].  The [] attention [of the IRS] should have been focused on the merits of the particular dispute. The evidence should be clear that the [IRS] understood the specific claim that was made even though there was a departure from form in its submission.

*Id.* at 297.

13

Hope Hospice first argues the court can bypass altogether the question of whether it complied with the statutory and regulatory requirements for an administrative refund claim because the IRS waived those requirements by making refunds totaling $119,720.58 after Hope Hospice submitted the November 15, 2021 letter, the Form 911 Request for Tax Advocate Service Assistance, and the FICA returns for the first quarters of 2019 and 2020. (Doc. 26 at pp. 4-7). But the connection of the refunds to the submissions is conclusory. Hope Hospice does not allege facts in its amended complaint that would suggest the refunds were accompanied by an indication they were issued in response to its communications with the IRS. It does not even make a conclusory allegation the refunds were attributable to the communications. Hope Hospice instead alleges the refunds were "attributable to [its] FICA tax returns." (Doc. 19 at ¶ 27). And its allegation regarding the response it received from the IRS in relation to the FICA returns for the first quarters of 2019 and 2020, if anything, undercuts its waiver argument. The IRS rejected the returns, taking the position Hope Hospice had to file amended returns – Form 941-Xs – for these quarters because the returns constructed by the IRS were the original returns. The IRS, in other words, enforced its formal claim requirements. There has been no "unmistakable" showing the IRS chose to dispense with formal claim requirements and investigate the merits of Hope Hospice's position, and so the court proceeds to consideration of those requirements.

14

The only submission Hope Hospice made to the IRS before commencing this action that complied with all regulatory requirements for an administrative refund claim was the Form 941-X for the first quarter of 2020.[9]  And while the Form 941-X for the first quarter of 2020 complied with all regulatory requirements for an administrative refund claim, it did not satisfy the requirements of § 6532(a)(1).  Hope Hospice submitted the form to the IRS in August 2022, approximately two months before commencing this action.  It did not wait the statutorily-mandated six months.  Assuming purely for the sake of argument the March 6, 2023 letter ever could qualify as a formal claim, standing alone or as a perfection of an earlier informal claim – something the Government contests – it does not on the facts of this case.  Hope Hospice did not submit the letter to the IRS until after it had initiated this action.

Hope Hospice seeks to avoid this conclusion by reference to the rule that a court looks to an amended complaint, not an original complaint, to determine whether subject matter jurisdiction exists.  (Doc. 26 at pp. 20-21).  When Hope Hospice filed its amended complaint, more than six months had passed since submission of its Form 941-X for the first quarter of 2020 to the IRS.  Of course, six months had not passed since submission of its March 6, 2023 letter to the IRS.  That letter was submitted to the IRS on the same day the amended complaint was filed in

---

[9] The most obvious way the November 15, 2021 letter, Form 911 Request for Tax Advocate Service Assistance, and FICA returns for the first quarters of 2019 and 2020 fail to comply with all regulatory requirements for an administrative refund claim is that they are not Form 941-Xs.

this court.  But Hope Hospice's argument suggests it would amend its complaint a second time to allege compliance with the six-month waiting period in relation to that letter.

A court does look to an amended complaint to determine whether subject matter jurisdiction exists because an amended complaint supersedes an original complaint and renders the original complaint a nullity.  *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006).  But " 'the state of things at the time of the action brought'" also matters. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)); *Eternal Word Television Network, Inc. v. Sebelius*, 935 F. Supp. 2d 1196, 1215 n.16 (N.D. Ala. 2013) (interpreting *Rockwell*); *Gale v. Chicago Title Ins. Co.*, 929 F.3d 74, 77-78 (2d Cir. 2019) (same); *Wullschleger v. Royal Canin U.S.A., Inc.*, --- F.4th ----, 2023 WL 4855186, at *3 (8th Cir. July 31, 2023).[10]  "The distinction between ['the state of things' and 'the *alleged* state of things'] is subtle."  *Wullschleger*, 2023 WL 4855186, at *3.  The former refers to "the actual facts on the ground" when the action was commenced. *Id.*  The latter refers to the facts alleged in the operative pleading.  *Id.*  "[B]oth 'the

---

[10] These are the rules applicable when a case originates in federal court.  A case removed from state court to federal court is treated differently.  *See Rockwell*, 549 U.S. at 474 n.6.

state of things' and 'the alleged state of things' must support jurisdiction." *Gale*, 929 F.3d at 77 (quoting *Rockwell*, 549 U.S. at 473).[11],[12]

An amended complaint can invoke subject matter jurisdiction by correcting inaccurate jurisdictional allegations. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-32 (1989) (explaining 28 U.S.C. § 1653 allows a party to amend "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves"). It can invoke subject matter jurisdiction by abandoning one alleged (but flawed) basis for the exercise of subject matter jurisdiction and substituting another before the jurisdictional issue has been raised. *See, e.g., ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008) (describing this type of amendment as "switching jurisdictional horses"). It can invoke subject

---

[11] Hope Hospice suggests the rules discussed in this paragraph are either-or propositions as to which there is a circuit split, with the Eleventh Circuit taking the view a court looks solely at an amended complaint to determine whether subject matter jurisdiction exists. (Doc. 26 at pp. 20-23). It cites in support of this suggestion the statement made by the Court of Federal Claims in *Walton v. United States*, 80 Fed. Cl. 251, 264 (2008), *aff'd*, 551 F.3d 1367 (2009), that "[t]h Federal Circuit . . . seemingly has rejected the view of the Fifth and Eleventh Circuits that a jurisdictional defect can be cured by subsequent events." But the court reads the relevant binding authority as harmonizing the rules in the manner described above and notes *Walton* addressed a jurisdictional statutory prerequisite for commencing a copyright infringement action and not a tax refund suit.

[12] Hope Hospice also suggests the "time of filing" rule applies only in diversity cases. (Doc. 26 at pp. 21-22). This suggestion is not without some support in the case law. *See, e.g., ConnectU*, 522 F.3d at 92 (explaining the rule originated in the context of diversity cases, "where heightened concerns about forum-shopping and strategic behavior offer special justifications for it," and that courts "have been careful not to import the [] rule indiscriminately into the federal question realm" because the same concerns "are not present in the mine-run of federal question cases"); *Wullschleger*, 2023 WL 4855186, at *4 (noting it is not clear rule applies in federal question cases "and certainly not to the extent it does in diversity cases"). But *Rockwell*, wherein the Supreme Court explained both "the state of things" and "the alleged state of things" must support the exercise of subject matter jurisdiction, was a case premised on federal question jurisdiction.

matter jurisdiction by dropping a dispensable defendant whose presence otherwise would defeat diversity jurisdiction. *See, e.g., Newman-Green*, 490 U.S. at 837 (holding appellate courts, like district courts, may permit amendment of complaint to dismiss dispensable, non-diverse defendant); *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, 2021 WL 5074465, at *4 (11th Cir. 2021) (holding district court properly granted plaintiffs' leave to amend complaint to drop dispensable defendants whose presence otherwise would defeat diversity jurisdiction). And it can destroy subject matter jurisdiction by withdrawing allegations which in the original complaint had provided the basis for the exercise of subject matter jurisdiction and failing to replace those allegations with others that establish jurisdiction. *See, e.g., Rockwell*, 549 U.S. at 473-74 (holding subject matter jurisdiction was defeated by withdrawal of allegations in amended complaint which in original complaint had satisfied jurisdictional statutory prerequisite for False Claims Act suit); *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243-44 (11th Cir. 2007) (holding that, when plaintiff amended his complaint and failed to include a federal claim, basis for district court's subject matter jurisdiction ceased to exist and district court should have dismissed plaintiff's state law claims). In each of these situations, "the state of things" – "the actual facts on the ground" – support subject matter jurisdiction and "the alleged state of things" – the facts alleged in the

operative pleading – support subject matter jurisdiction.  Only the latter have changed.

But an amended complaint cannot create or destroy subject matter jurisdiction by altering the facts as they existed at the time of commencement of the action.  *See, e.g., Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 574-75 (2004) (holding that, while change in parties can cure lack of diversity jurisdiction, the same is not true of change in citizenship of continuing party); *Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 358 (S.D. Ga. 1984) (explaining "[d]iversity of citizenship, or domicile, must exists at the time the suit is filed in order for jurisdiction to be proper" and "[s]ubsequent changes in the domicile of either party does not affect jurisdiction") (citing *Smith v. Sperling*, 354 U.S. 91, 93, 93 n.1 (1957)).  And that is what Hope Hospice seeks to do here.

The only case Hope Hospice cites that directly speaks to amendment of a complaint to allege post-commencement compliance with the jurisdictional prerequisites for a tax refund suit – *Mires v. United States*, 466 F.3d 1208 (10th Cir. 2006) – is unpersuasive.  *Mires* originated as a tax refund suit commenced by a taxpayer before paying the disputed taxes or submitting an administrative refund claim to the IRS.  466 F.3d at 1209.  After the Government sought dismissal for lack of subject matter jurisdiction, the taxpayer paid the disputed taxes, submitted an administrative refund claim to the IRS, and with the Government's consent,

amended its complaint to allege compliance with the two jurisdictional prerequisites. *Id.* After losing on the merits at the district court level, the taxpayer appealed, arguing the jurisdictional defects that existed at the time the case was filed could not be cured. *Id.* The Tenth Circuit rejected this argument but limited its holding to the particular circumstances of the case before it. *Id.* at 1209, 1212. Those circumstances included the "specious" posture of a party which, after losing on the merits, appealed and "reverse[d] course on a legal position it successfully maintained in the district court." *Id.* at 1212. The Tenth Circuit also signaled its reluctance to reach a similar holding in future cases. *See id.* ("Of course, this exception does not mean that plaintiffs should habitually neglect Section 1346(a)(1)'s mandates before filing suit. . . . [W]e expect that in future cases, the risk that a lawyer will be unable to understand the exhaustion requirement is virtually nonexistent.") (internal quotation marks omitted). "[O]ther courts have been reluctant to rely on 'the extremely narrow holding in *Mires*.'" *Hassel Family Chiropratic DC PC v. United States*, 2016 WL 8542539, at *14 (S.D. Iowa Dec. 5, 2016) (quoting *Waters v. Anonymous Hosp. A*, 2011 WL 1458161, at *4 (S.D. Ind. Apr. 14, 2011)).

Lastly, Hope Hospice asserts it is entitled to conduct jurisdictional discovery prior to any dismissal for lack of subject matter jurisdiction. (Doc. 26 at pp. 3, 14 n.2, 16, 24). The court disagrees. A plaintiff does have a qualified right to jurisdictional discovery. *Am Civ. Liberties Union of Fla., Inc. v. City of Sarasota*,

859 F.3d 1337, 1341 (11th Cir. 2017).  But Hope Hospice's assertion of the right is made in the context of seeking to demonstrate certain of its submissions to the IRS were treated by the IRS as informal claims.  As explained above, whether the submissions qualify as informal claims is beside the point because no informal claim, if that, was perfected at least six months prior to commencement of this action. Moreover, a plaintiff is not entitled to jurisdictional discovery unless it seeks the discovery properly – for example, by filing a timely motion.  A plaintiff who requests jurisdictional discovery as an alternative to dismissal in briefing submitted in response to a motion to dismiss has not sought jurisdictional discovery properly. *See, e.g., United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009) (holding district court did not err by dismissing case for lack of personal jurisdiction instead of granting plaintiff's requests for jurisdictional discovery contained in briefing responsive to motion to dismiss).  And Hope Hospice does not so much request jurisdictional discovery in its responsive briefing as it asserts a right to conduct the discovery after, the court notes, asking the court to stay discovery pending disposition of the Government's motion to dismiss.  This is not a sufficient invocation of the qualified right.

## V. Conclusion

For the reasons stated above, the Government's Rule 12(b)(1) motion (Doc. 23) is due to be **GRANTED**, and this case is due to be **DISMISSED WITHOUT**

**PREJUDICE** for lack of subject matter jurisdiction.   A separate order will be

entered.

   **DONE** this 1st day of December, 2023.


                            STACI  G. CORNELIUS
                            U.S. MAGISTRATE JUDGE